UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| MARCUS DE LA O, § | |
| § | |
| *Plaintiff*, § | |
| v. § | |
| § | EP-25-CV-00033-ATB |
| FRANK BISIGNANO, *Commissioner of* § | |
| *Social Security Administration*, § | |
| § | |
| *Defendant.* § | |
| § | |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision by the Social Security Administration (SSA). Pursuant to 42 U.S.C. § 405(g), Plaintiff Marcos De La O, the claimant at the administrative level, appeals from the final decision of Defendant Frank Bisignano, the SSA's Commissioner, denying his claims for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and § 1382, *et seq.* The parties consented to have a magistrate judge conduct all proceedings, including the entry of final judgment. For the reasons that follow, the Court finds that the Commissioner's decision should be AFFIRMED.

**I.   BACKGROUND**

On September 22, 2021, De La O applied for DIB and SSI, alleging that he became disabled as of June 22, 2021, due to major depressive disorder and bipolar disorder with psychotic features.[1] He was thirty-nine years old when he applied for benefits.[2] He has a high

---

[1] Tr. of Admin. R. [hereinafter Tr.] at 32, 348. The record reflects that previously, in September 2018, De La O filed an application for DIB and SSI, alleging disability beginning on July 16, 2018, but that application was unsuccessful. *Id.* at 87, 99, 105.

[2] *Id.* at 288.

school education and vocational training in computer electronics and electrical work.[3] Previously, he worked as an electrician and handyman.[4]

De La O's DIB and SSI claims were denied initially on November 1, 2022, and upon reconsideration on August 26, 2023. Thereafter, De La O requested a hearing before an Administrative Law Judge (ALJ). On March 7, 2024, ALJ Michael S. Hertzig held a hearing, where De La O and a vocational expert (VE) testified; at the hearing, De La O was represented by his administrative counsel. On April 16, 2024, ALJ Hertzig issued a written decision, wherein he found that De La O was not disabled within the meaning of the Social Security Act and denied De La O's claims.[5] On June 12, 2024, De La O appealed to the Social Security Appeals Council for review of the ALJ's decision. On June 27, 2024, the Appeals Council denied his request for review, finding no basis for changing the ALJ's decision.[6] The ALJ's decision thereby became the final decision of the Commissioner.[7]

On February 2, 2025, De La O, proceeding *in forma pauperis*, brought this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). On May 12, 2025, De La O filed his opening brief requesting that the Commissioner's decision be vacated and his claims be remanded for further proceedings. Pl.'s Br. at 19, ECF No. 9. On January 3, 2025, the Commissioner filed a brief in response, Br. in Supp. of Comm'r's Decision

---

[3] *Id.* at 349.

[4] *Id.* at 349, 374.

[5] *Id.* at 49.

[6] *Id.* at 19.

[7] *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) ("The ALJ's decision thus became the Commissioner's final and official decision when the Appeals Council denied [the claimant's] request for review on the merits.").

at 1, 6 [hereinafter Def.'s Resp.], ECF No. 14, and De La O followed by filing a reply on July 23, 2025, Pl.'s Reply Br., ECF No. 15.

## II. THE SEQUENTIAL EVALUATION PROCESS AND THE ALJ'S FINDINGS AND CONCLUSIONS

Eligibility for SSI (on the basis of disability) or DIB requires that the claimant be "disabled" within the meaning of the Social Security Act. 42 U.S.C. §§ 423(a)(1)(E), 1382(a). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A). "A claimant has the burden of proving he suffers from a disability." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

To determine disability, the Commissioner uses a sequential, five-step approach, which considers:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017) (cleaned up); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[8] "The burden of proof is on the claimant at the first four steps," *Kneeland*, 850 F.3d at 753, and if he gets past these steps, "the burden shifts to the Commissioner on the fifth step to prove the claimant's employability," *Keel v. Saul*, 986 F.3d

---

[8] "'The relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI].'" *Undheim v. Barnhart*, 214 F. App'x 448, 449 n.1 (5th Cir. 2007) (quoting *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985)). Part 404 of 20 C.F.R. relates to DIB, *see* 20 C.F.R. § 404.1, whereas Part 416 relates to SSI, *see* 20 C.F.R. § 416.101. As relevant here, the regulations are not materially different; so, hereinafter, the Court may cite to Parts 404 and 416 interchangeably. *See Sun v. Colvin*, 793 F.3d 502, 506 n.1 (5th Cir. 2015).

551, 555 (5th Cir. 2021).  A determination at any step that the claimant is disabled or is not disabled "ends the inquiry." *Id*.

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Kneeland*, 850 F.3d at 754.  "The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* (brackets omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  "The RFC is used in both step four and step five to determine whether the claimant is able to do [his] past work or other available work." *Kneeland*, 850 F.3d at 754.

Here, ALJ Hertzig evaluated De La O's claims pursuant to the above-mentioned five-step sequential evaluation process.  The ALJ found, as a threshold matter for De La O's DIB claim, that his last date insured is March 31, 2024.  Tr. at 34.  At step one, the ALJ found that De La O had not engaged in substantial gainful activity since June 22, 2021, his alleged disability onset date.  *Id.*  At step two, the ALJ found that De La O has the following "severe" impairments: diabetes mellitus, peripheral neuropathy, arthropathy, hyperlipidemia, essential hypertension, chronic infections of the skin/psoriatic arthritis, obesity, substance addiction, anxiety, and depression.  *Id.* at 34–35.  At step three, the ALJ found that De La O's impairments, alone or in combination, do not meet or equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 that would lead to an automatic finding of disability.  *Id.* at 35.

Next, before going to step four, the ALJ determined that De La O has the RFC to perform "medium work" as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except for certain postural and mental limitations.  *Id.* 37–38.  Specifically, regarding De La O's mental RFC, the

ALJ found that De La O can understand, remember, and carry out detailed but not complex instructions, and can frequently interact with the general public. *Id.* at 38.

At step four, the ALJ found, based upon the VE's testimony, that given De La O's RFC, he could not perform his past relevant work of electrician and handyman, as these jobs are actually or generally performed in the national economy. *Id.* at 47, 81–82. At step five, the ALJ found, again based upon the VE's testimony, that given De La O's age, education, work experience, and RFC, he could work as a dishwasher (DOT No. 318.687-010), hand-packager (DOT No. 920.587-018), and food service worker (DOT No. 319.677-014), and that these jobs existed in significant numbers in the national economy. *Id.* at 48–49, 82. The ALJ concluded that De La O was not disabled from June 22, 2021, the alleged disability onset date, through April 16, 2024, the date of the ALJ's decision. *Id.* at 49.

## III.   STANDARDS FOR JUDICIAL REVIEW

Judicial review, under 42 U.S.C. § 405(g), of the Commissioner's decision denying social security benefits is "highly deferential." *Garcia*, 880 F.3d at 704. Courts review the Commissioner's decision "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quotation marks and citation omitted).

Substantial evidence is "more than a mere scintilla," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), but "less than a preponderance of the evidence," *Schofield v. Saul*, 950 F.3d 315, 320 (5th Cir. 2020). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (internal quotes omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such

evidentiary sufficiency is not high." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

In reviewing the Commissioner's decision, "the court scrutinizes the record to determine whether [substantial] evidence is present." *Sun*, 793 F.3d at 508. It may not "try the issues *de novo*" or "reweigh the evidence," *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "[N]or, in the event of evidentiary conflict or uncertainty," may the court substitute its judgment for the Commissioner's, "even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia*, 880 F.3d at 704. "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun*, 793 F.3d at 508.

## IV. DISCUSSION

De La O raises a single assignment of error: the Commissioner erred as a matter of law by failing to articulate how he considered the "consistency" of Jocelyn Medina's medical opinions in violation of 20 C.F.R. § 404.1520c. Pl.'s Br. at 7. Medina, who is a psychiatric mental health nurse practitioner at Emergence Health Network, El Paso Center for Mental Health/Intellectual Disabilities, treated De La O for, *inter alia*, his depression. *See, e.g.*, Tr. at 51, 79.

In determining a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence" of record, including any "medical opinions." 20 C.F.R. § 404.1545(a)(3) (cross-citing 20 C.F.R. § 404.1513); *see also id.* § 404.1513(a)(2) (defining "medical opinion"). The ALJ must "evaluate the persuasiveness of" all medical opinions using a list of factors and must "articulate" how persuasive he finds them. *Id.* § 404.1520c(a)–(b). In his written decision, the ALJ must also "explain" how he "considered the supportability and consistency factors"—the

"most important" factors—for a medical source's medical opinions. *Id.* § 404.1520c(b)(2). "Supportability" is the degree to which the medical source supports her medical opinion by "objective medical evidence" and "explanations," whereas "consistency" is the degree to which her medical opinion is "consistent" with the evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(1)–(2); *see also Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023). The ALJ need not "explain" how he considered the remaining factors unless certain circumstances are present. 20 C.F.R. § 404.1520c(b)(2)–(3).

In his written decision, the ALJ "need not reiterate the magic words 'support' and 'consistent,'" so long as he "weave[s] supportability and consistency throughout [his] analysis." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).[9] The ALJ "need only 'minimally articulate' [his] reasoning for the persuasiveness of [a] medical opinion." *Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. June 23, 2023) (original brackets omitted) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)); *see also Lynch v. Comm'r Soc. Sec.*, No. 23-1982, 2024 WL 2237961, at *2 (3d Cir. May 17, 2024) ("The depth of explanation required is not extensive."). Still, the ALJ's explanation must "permit meaningful [judicial] review," *Lynch*, 2024 WL 2237961, at *2; *cf. Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (A conclusory determination without any discussion of pertinent evidence and "any explanation as to how [the ALJ] reached the [determination]" is "beyond meaningful judicial review.").

Medina rendered her opinions on a check-box, fill-in-the-blank form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." Tr. at 848–50. In his

---

[9] *Cf. Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (rejecting the notion that an ALJ must "follow formalistic rules in his articulation" to explain his findings); *Keel*, 986 F.3d at 556 ("[A] case will not be remanded simply because the ALJ did not use 'magic words.'" (quoting *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986))).

written decision, the ALJ evaluated her opinions and found that they were not persuasive. *Id.* at 46. The ALJ explained as follows:

> Jocelyn Medina PMHNP submitted a Medical Source Statement dated July 13, 2023 (B9F), finding the claimant has moderate limitation in his ability to understand, remember, and carry out simple instructions, and ability to make judgments on simple work-related decisions, with extreme limitations with complex instructions. She said he has marked [limitation in] social interaction, including public, supervisors, and coworkers. She supported her opinion by noting that he has been diagnosed with bipolar disorder with psychotic features; is unable to fully concentrate, focus, and maintain pace at work due to symptoms of bipolar such as hallucinations, racing thoughts, and manic symptoms; and when asked to identify the factors that support her assessment, she said factors include hallucinations, mania, depression, and delusions. This opinion is not persuasive because it is not supported by sufficient explanation and is somewhat circular.
>
> It is also not supported by NP Medina's treatment notes. Thus, while earlier notes show he complained of hallucinations, he consistently had intact memory, attention, and concentration, and had normal behavior, appearance, and fund of knowledge; he also had normal thought content and coherent thought process with fair judgment and insight; he also denied feeling down and depressed, denied trouble concentrating, and had PHQ-9 scores of 2 and 4 (B8F). Moreover, it is also not supported by her more recent treatment notes, including treatment notes on July 13, 2023, on the date of the opinion; that shows he specifically denied auditory and visual hallucinations, denied suicidal and homicidal ideations, and was sleeping 8-10 hours. He said he was feeling good. He said his anxiety was a 3 out of ten, his lack of concentration a 4 out of ten, and a PHQ 9 score of 2. NP Medina specifically stated, "Patient is doing well with medication and would like to continue with medication. Appointment today was to fill out paperwork for SS benefits." She then documented an examination that showed normal appearance and manner, clear speech, good insight and judgment, and oriented x 4. He had coherent thought process, and with regard to thought associations noted he had no perceptual disturbances and no delusions. He had intact immediate, recent, and remote memory. He had normal attention span and concentration. He had normal psychomotor activity and grossly intact cognition. He had good fund of knowledge. His mood was euthymic, and he was cooperative. With regard to thought content NP Medina said he had no suicidal or homicidal ideation. She said "Paperwork for SS benefits has been filled out with patient and given to patient. Follow up in 3 months. Medication remains the same" (B15F/34-35). *Thus, this opinion is not persuasive because it is not supported by NP Medina's treatment notes, or the overall record (e.g., B6F)*.

*Id.* (emphasis added). The last sentence, italicized above, forms the basis of De La O's assignment of error.

De La O does not argue that the ALJ's persuasiveness determination is not supported by substantial evidence. Nor does he argue that the ALJ did not adequately analyze the supportability of Medina's opinions. *See* Pl.'s Br. at 13 (conceding that the ALJ provided "a somewhat lengthy" supportability analysis of Medina's opinions). Instead, he argues that the ALJ failed to provide a "proper" and "meaningful" consistency analysis. *Id.* at 12–13.

Specifically, he points out that the second paragraph of the ALJ's persuasiveness analysis totals 315 words, of which the first 293 words address his supportability analysis, and the last 22 words contain his conclusions of his supportability and consistency analyses. *Id.* at 12. He recites the last 22 words as follows: "'Thus, <u>this opinion is not</u> persuasive because it is not <u>supported by</u> NP Medina's treatment notes, or <u>the overall record</u> (e.g., B6F).'" *Id.* (quoting Tr. at 46) (underlines in original). Contending that the underlined words are the entirety of the ALJ's consistency analysis, De La O argues that a conclusory, *nine-word* consistency analysis is not a proper consistency analysis. *Id.* In essence, De La O is challenging the sufficiency of the ALJ's explanation for his consistency finding.

As the Commissioner points out, De La O glosses over the ALJ's parenthetical citation immediately following the last sentence of his persuasiveness analysis. Def.'s Resp. at 6–7. To repeat, following his statement that Medina's opinion "is not supported by . . . the overall record," the ALJ cited Exhibit B6F—as an example. Tr. at 56 ("(e.g., B6F)"). That exhibit is a consultative examination report prepared by Randall Rattan, Ph.D., a board-certified clinical psychologist, who examined De La O in August 2022. *Id.* at 692–99. Throughout his written decision, the ALJ discussed Dr. Rattan's report at length—three times—before he evaluated the persuasiveness of Medina's opinions. *Id.* at 36–37, 42, 45–46. And in the third instance, which immediately precedes his evaluation of Medina's opinions, the ALJ evaluated the persuasiveness

of Dr. Rattan's opinions contained in that report and found them to be "somewhat persuasive." *Id.* at 45.

In assessing whether an ALJ adequately explained his persuasiveness findings, courts, including this one, have considered the ALJ's discussion elsewhere in his written decision about the evidence mentioned and cited in his persuasiveness analysis. *E.g.*, *Drumgold v. Comm'r of Soc. Sec.*, --- F.4th ---, No. 24-1394, 2025 WL 2017232, at *7 & n.13 (4th Cir. July 18, 2025) (considering "conflicting evidence" in the exhibits cited by the ALJ immediately following his statement that the medical source's "opinions . . . are not consistent with the totality of the evidence"); *Cropper v. Dudek*, 136 F.4th 809, 815 (8th Cir. 2025) (in response to plaintiff-claimant's objection to "the ALJ's 'cursory' [supportability] explanation and citation to . . . the provider['s] treatment notes"—stating that the plaintiff "ignores the ALJ's thorough review of [the provider's] examination notes earlier in the ALJ's opinion");[10] *cf. Belk v. Colvin*, 648 F. App'x 452, 454–55 (5th Cir. 2016) (reviewing ALJ's discussion of medical evidence "in a different part of her decision" to assess whether the ALJ adequately explained his findings at step three). After all, "it would be a needless formality to have the ALJ repeat substantially similar factual analyses," *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004), in his

---

[10] *See also, e.g.*, *Venegas v. O'Malley*, No. EP-24-CV-00001-KC-ATB, 2024 WL 5182647, at *9 (W.D. Tex. Dec. 13, 2024) (Berton, M.J.) (considering the ALJ's discussion, "elsewhere in her decision" of the exhibits that she cited in her persuasiveness analysis and other relevant evidence, and concluding that the ALJ did not err in her persuasiveness analysis), *R & R adopted*, 2025 WL 28660 (W.D. Tex. Jan. 3, 2025); *Acosta v. Kijakazi*, No. EP-22-CV-00417-ATB, 2023 WL 6135687, at *4–*5 (W.D. Tex. Sept. 19, 2023) (Berton, M.J.) (concluding that the ALJ adequately explained the consistency factor for a state agency psychological consultant's opinions where the ALJ stated that the consultant's opinions were "consistent with the treatment record from Emergence Health Network" and "[t]hroughout his written decision, the ALJ discussed various . . . treatment notes" from that clinic); *cf. also Stephen R. v. O'Malley*, No. 21-2292, 2024 WL 3508155, at *4 (4th Cir. July 23, 2024) (concluding that the ALJ did not correctly apply 20 C.F.R. § 404.1520c to reports by state psychologists because his persuasiveness "analysis was threadbare and lacked *citations*" in that "[h]e merely noted that 'these doctors' opinions were grounded in the evidence contained in the record at the time,' and that they 'are consistent with and supported by other medical evidence in the file and the entire record as a whole,'" but "[n]*owhere did he reference or describe to what evidence he was referring*" (emphasis added)).

persuasiveness analysis, *Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *2 (2d Cir. May 15, 2024) ("Nor did the ALJ err . . . by failing to explicitly repeat his prior examination of the record as part of the persuasiveness analysis.").

And here, in his consistency analysis, the ALJ not only mentioned "the overall record" but also specifically cited Dr. Rattan's report as an example of that record. The Court need not review the ALJ's discussion of the entire record elsewhere in his decision but need only review his discussion of Dr. Rattan's report for a more fulsome explanation of his consistency finding. *Cf. id.*, 2024 WL 2180203, at *2 (observing that the ALJ noted that the providers' opinions were "consistent with the record as a whole, including the evidence described above regarding the claimant's activities of daily living," explaining that, "[t]hat record as a whole, as the ALJ set forth earlier in his decision, included [the plaintiff-claimant's] mental health treatment notes . . . [, his] hearing testimony, and evidence of his daily activities," and concluding that the ALJ adequately explained the supportability and consistency of each medical opinion in the record).

The ALJ found that Dr. Rattan's examination was generally unremarkable. Tr. at 45. The ALJ noted that Dr. Rattan's examination showed that De La O's remote memory was grossly intact, his attention and concentration were likely grossly intact, his abstraction ability was likely average, no potential deficits in judgment were observed, and his insight into the nature of psychological problems appeared fair. *Id*. at 42–43 (citing Dr. Rattan's report); *see also id.* at 695 (Dr. Rattan's report). He also noted that during the examination, De La O was polite and at least superficially cooperative, and rapport was established and maintained. *Id.* at 36 (citing Dr. Rattan's report). These pieces of evidence from Dr. Rattan's report are similar to those that the ALJ recounted from Medina's treatment notes in his supportability analysis. *See id.* at 46 (recounting that De La O was cooperative, and he had normal behavior; intact memory,

attention, and concentration; intact immediate, recent, and remote memory; normal attention span and concentration; grossly intact cognition; fair judgment and insight; and good insight and judgment (citing Medina's treatment notes)). In light of these similarities, the Court is able to discern why the ALJ found that Medina's opinions were not consistent with Dr. Rattan's report, just as he found that Medina's opinions were not supported by her own treatment notes—a finding that De La O does not challenge. *Id.* at 46.

The upshot is this: although in the paragraphs dedicated to his persuasiveness analysis, the ALJ did not in so many words explain why he found that Medina's opinions were inconsistent with the overall record, his analysis together with his discussion of Dr. Rattan's report in different parts of his decision is adequate to provide a basis for meaningful judicial review. The Court therefore finds that the ALJ adequately explained how he considered the consistency factor for Medina's opinions. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

De La O also argues that in the consistency analysis, the ALJ failed to explain why certain limitations found by Medina were not included in the RFC. Pl.'s Br. at 14. Recall that the ALJ found that De La O "[c]an understand, remember, and carry out detailed but not complex instructions, and can frequently interact with the general public." Tr. at 38. De La O points out that Medina opined that he has moderate limitation in his ability to understand, remember, and carry out simple instructions; marked limitation in his ability to interact appropriately with the public, supervisors; and marked limitation in his ability to respond appropriately to usual work situations and to changes in a routine work setting.[11] Pl.'s Br. at 13–

---

[11] In his persuasiveness analysis, the ALJ did not mention the last limitation (regarding ability to respond to work situations and changes), but the regulations do not require "the ALJ to expressly address the persuasiveness of every opinion." *Moore v. Comm'r*, No. 3:20-CV-241-SA-DAS, 2021 WL 2834395, at *2 (N.D. Miss. July 7, 2021) (citing 20 C.F.R. § 404.1520c(b)(1)); *see also* 20 C.F.R. § 404.1520c(b)(1) ("[The ALJ is] not required to articulate how [he] considered each medical opinion . . .

- 12 -

14 (citing Tr. at 848–49 (Medina's opinions)). However, De La O continues, these limitations do not appear in the mental RFC, and the ALJ did not provide a consistency analysis to explain why they were not included. *Id.* at 14.

The ALJ not only found that Medina's opinions were not consistent with the overall record, but also found that her opinions, which she provided on a check-box, fill-in-the-blank form, were not supported by sufficient explanation and her own treatment notes. *See, e.g.*, *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (discounting a treating physician's assessment consisting of "vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses"); *Cropper*, 136 F.4th at 815 ("An ALJ may properly consider a provider's own examination notes when determining whether that provider's opinion is supported.").[12] As discussed above, the ALJ's consistency analysis was adequate, and there is nothing to suggest that the ALJ's supportability analysis was deficient. Indeed, De La O does not challenge the supportability analysis; nor does he argue that the ALJ's persuasiveness analysis lacks support from substantial evidence. That is to say, De La O has not shown that the ALJ "improperly applied" 20 C.F.R. § 404.1520c or that his persuasiveness determination "was not based on substantial evidence." *Webster*, 19 F.4th at 719.

---

from one medical source individually."); *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) ("The ALJ does not need to comment on every piece of evidence.").

[12] *See also, e.g.*, *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (concluding that a treating physician's opinion was not entitled to considerable weight because of "its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations"); *Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("A conflict between a treating physician's medical opinion and his own notes is a clear and convincing reason for not relying on the doctor's opinion, and therefore is also a specific and legitimate reason for rejecting it." (internal quotes omitted)).

As such, the ALJ's negative supportability and consistency findings serve to explain why he did not include in the RFC the specific limitations found by Medina; no further explanation was required. *See Webster*, 19 F.4th at 719 (concluding that the ALJ there "articulated his reasons for rejecting" an examining physician's opinion because "[a]s is required by Section 404.1520c," the ALJ "considered both the consistency and supportability of" the physician's opinion and determined that the physician's opinion was only supported by his own findings and was inconsistent with the plaintiff-claimant's medical history and longitudinal treatment records indicating improvement to the symptoms caused by the plaintiff's PTSD); *see also Bayness v. O'Malley*, No. 23-35246, 2024 WL 2931419, at *1–*2 (9th Cir. June 11, 2024) (concluding that the ALJ there "sufficiently explained" her persuasiveness analysis and her conclusions were supported by substantial evidence, and therefore, concluding that the ALJ did not err "in omitting rejected evidence from her RFC determination"); *Calvert v. Colvin*, No. EP-14-CV-404-ATB, 2016 WL 3906821, at *3 (W.D. Tex. July 14, 2016) ("The ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record." (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988))).

The Court overrules De La O's assignment of error.

## V.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**So ORDERED and SIGNED this  5th  day of August 2025.**

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**